## STOUTENBURGH *v.* HENNICK.

ERROR TO THE. SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 722.   Submitted December 18, 1888. — Decided January 14, 1889.

Under the authority conferred upon Congress by § 8, Article I, of the Constitution, " to make all laws which shall be necessary or proper for carrying into execution" the power " to exercise exclusive legislation in all cases whatsoever over" the District of Columbia, Congress. may constitute the District " a body corporate for municipal purposes," but can only authorize it to exercise municipal powers.

The Act of the Legislative Assembly of the District of Columbia of August 23, 1871, as amended June 20, 1872, relating to license taxes on persons engaging in trade, business or profession within the District, was intended to be a regulation of a purely municipal character-; but nevertheless the provision in clause 3, of § 21, which required commercial agents, engaged in offering merchandise for sale by sample, to take out and pay for such a license, is a regulation of interstate commerce, so far as applicable.to persons soliciting the sale of goods on behalf of individuals or firms doing business outside of the District, and it was not within the

constitutional power of Congress to delegate to that legislature authority
to enact a clause with such a provision, nor did it in fact do so in a
grant of power for municipal purposes.

*Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, and *Asher* v. *Texas,*
128 U. S. 129, affirmed.

The repeal or modification by Congress of clauses in a legislative act of th\.
District of Columbia, which are separable and separably operative, is no
ratification of another clause in it, equally separable and separably opera-
tive, which it was beyond the delegated or constitutional power of the
Legislature of the District to enact.

HENNICK, the defendant in error, was convicted in the Police
Court of the District of Columbia, upon an information stating
that he, in April, 1887, "did engage in the business of a com-
mercial agent, to wit, the business of offering for sale, as agent
of Lyons, Conklin & Co., a firm doing business in the city of
Baltimore, State of Maryland, certain goods, wares, and mer-
chandise by sample, catalogue, and otherwise, without having
first obtained a license to do so, contrary to and in violation
of an act of the late Legislative Assembly of the District of
Columbia, entitled 'An act imposing a license on trades, busi-
ness, and professions practised or carried on in the District of
Columbia,' and providing for the enforcement and collection
of fines and penalties for carrying on business in the said Dis-
trict without license, approved August 23, A.D. 1871, and the
amendments to the said act, approved June 20, A.D. 1872,"
and sentenced "to pay a fine of five dollars, in addition to the
license tax of two hundred dollars, and in default to be com-
mitted to the workhouse for the term of sixty days," and
being in default was so committed. He applied to one of
the Justices of the Supreme Court of the District for, and
obtained, a writ of *habeas corpus*, which was certified to be
heard in the first instance in the general term of that court,
and, upon hearing, it was held "that the law for the violation
of which the petitioner is held is not a valid law," and his
discharge from custody was ordered accordingly; whereupon
this writ of error was sued out.

The act in question was passed by the then Legislative
Assembly of the District, August 23, 1871, and amended June
20, 1872 (Laws District Columbia, Acts First Session, p. 87;

Acts Second Session, p. 60), and by its first section it was provided: "That no person shall be engaged in any trade, business, or profession hereinafter mentioned, until he shall have obtained a license therefor as hereinafter provided."

. Then followed twenty-three sections of which the twenty-first is subdivided into forty-eight clauses. Clause 3 was so amended as to read: "Commercial agents shall pay, two hundred dollars annually. Every person whose business it is, as agent, to offer for sale goods, wares or merchandise by sample, catalogue or otherwise, shall be regarded as a commercial agent."

Section 4 of the act is in these words, "That every person liable for license tax, who, failing to pay the same within thirty days after the same has become due and payable, for such neglect shall, in addition to the license tax imposed, pay a fine or penalty of not less than five nor more than fifty dollars, and a like fine or penalty for every subsequent offence."

And then follows a proviso not material here.

A part of the act was repealed by Congress, February 17, 1873; 17 Stat. 464; the 23d section and clauses 20 and 35 of the 21st section, and clause 16 of the 21st section as amended, were repealed and modified July 12, 1876, 19 Stat. 88, as were also, on January 26, 1887, parts of clause 38 of § 21 as amended, and of § 15.

Sections 1 and 18 of the act of Congress of February 21, 1871, entitled "An act to provide a government for the District of Columbia," 16 Stat. 419, are as follows:

"SEC. 1. That all that part of the territory of the United States included within the limits of the District of Columbia be, and the same is hereby, created into a government by the name of the District of Columbia, by which name it is hereby constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this act."

"SEC. 18. That the legislative power of the District shall

extend to all rightful subjects of legislation within said District, consistent with the Constitution of the United States and the provisions of this act, subject, nevertheless, to all the restrictions and limitations imposed upon States by the tenth section of the first article of the Constitution of the United States; but all acts of the legislative assembly shall at all times be subject to repeal or modification by the Congress of the United States, and nothing herein shall be construed to deprive Congress of the power of legislation over said District in as ample manner as if this law had not been enacted."

These sections are carried forward into the act of Congress of June 22, 1874, entitled "An act to revise and consolidate the statutes of the United States, general and permanent in their nature, relating to the District of Columbia, in force on the first day of December, in the year of our Lord one thousand eight hundred and seventy-three," as sections 2, 49 and 50.

*Mr. Henry E. Davis* for plaintiff in error.

I. The power of the Legislative Assembly, which emanated from Congress, extended "to all rightful subjects of legislation within the District consistent with the Constitution of the United States . . . subject to all the restrictions and limitations imposed upon States by the tenth section of the first article of the Constitution of the United States," and all acts of the Assembly were "subject to repeal or modification by the Congress of the United States." Rev. Stat. Dist. Col. §§ 49, 50.

The extent of the power thus conferred upon the Legislative Assembly was considered by the Supreme Court of the District of Columbia in *Roach* v. *Van Riswick*, McArthur & Mackay, 171; *Cooper* v. *District of Columbia*, McArthur & Mackay, 250; and *District of Columbia* v. *Waggaman*, 4 Mackay, 328; and in the last-mentioned case the very license act under consideration was held as within the power; and in *District of Columbia* v. *Oyster*, 4 Mackay, 285, the act was administered by the same court without any question or expression of doubt as to its being properly within the

power granted and properly grantable by Congress to the Assembly.

.The effect of this is that this legislation, being that of a duly authorized agent of Congress, is that of Congress itself. And even if that were not so, Congress has adopted it in the several acts of February 17, 1873, c. 148, 17 Stat. 464; July 12, 1876, c. 180, § 19, 19 Stat. 83; and January 26, 1887, c. 48, 24 Stat. 368; in part amending and in part repealing the act of the Assembly, whereby, by the clearest implication, the rest of the act is adopted.

II. The question raised by the petition is supposed to find support in Art. 1, § 8, of the Constitution of the United States, clauses 1 and 3, and in § 9 of the same article, clause 6.

As to the first of these provisions, it is enough to say that the license tax in question is not a duty, an impost, or an excise, and is not, therefore, within that provision requiring uniformity throughout the United States. As to the last, the license law for the District of Columbia gives no preference to the ports of any State, or even of the District, over those of any other State, and it is not easily conceived how that clause can be thought to have any relevancy to the subject in hand.

A question seems, however, to be presented by the remaining of the three clauses above enumerated, viz., whether, as a regulation of commerce, the license law for the District is invalid, as obnoxious to the Constitution of the United States.

*a.* Whether the law regulates commerce, in the sense of the Constitution, is immaterial. Whether it does so regulate commerce may be determined by the following cases: *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Corson* v. *Maryland,* 120 U. S. 502; *Fargo* v. *Michigan,* 121 U. S. 230; *Ouachita Packet Co.* v. *Aiken,* 121 U. S. 444; *Philadelphia &c. Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Western Union Telegraph Co.* v. *Pendleton,* 122 U. S. 347; *Bowman* v. *Chicago &c. Railway Co.,* 125 U. S. 465; *Ratterman* v. *Western Union Telegraph Co.,* 127 U. S. 411; *Leloup* v. *Port of Mobile,* 127 U. S. 640.

*b.* In any event it is certain that, as above pointed out, the law is, in effect, an enactment of Congress.

*c.* The question, then, becomes : has Congress power under the Constitution to pass such a law? As to the extent of its power to legislate over the District of Columbia, it is sufficient to refer to Chief Justice Marshall's opinion in *Loughborough* v. *Blake*, 5 Wheat. 317, 324 ; and, touching the power to regulate commerce, to what is said in *Gibbons* v. *Ogden*, 9 Wheat. 1, 196, 197.

What limitations then exist on the power of Congress in regulating commerce? Seemingly none, except those distinctly prescribed by the Constitution, none of which apply to this case. And this legislation both emanated from Congress, and has been adopted by it, and has the same validity as if its provisions had been specifically made by it.

*d.* The recent decisions of the Supreme Court of the United States in *Robbins* v. *Taxing District, etc., ubi supra*, in reality do not affect the question under consideration.

In those cases it was held only that given laws of the States concerned were invalid, as dealing with the subject of commerce, which, by the Constitution, was committed to Congress. The power of Congress, its extent and its limitations in the premises, were not under consideration.

*e.* The petitioner has no right to complain of the District license law. He is not a member of a foreign nation or an Indian tribe, and the law does not affect commerce "among the several States."

The District of Columbia is not a State, in the meaning of the Constitution. *Hepburn* v. *Ellzey*, 2 Cranch, 445 ; *New Orleans* v. *Winter*, 1 Wheat. 91 ; *Scott* v. *Jones*, 5 How. 342, 377 ; *Barney* v. *Baltimore*, 6 Wall. 280, 287 ; *Railroad Co.* v. *Harris*, 12 Wall. 65, 86.

And in respect of regulating commerce there is in the Constitution no prohibition upon either Congress or any State to discriminate for or against the District, as between it and such or any State. "The sole restraints" against abuse in this respect are those mentioned by Chief Justice Marshall in *Gibbons* v. *Ogden* ; and disregard of those restraints can only be reached by counter-legislation ; they cannot be affected by any action of the judiciary.

*Mr. Francis M. Darby, Mr. Skipwith Wilmer, Mr. John Henry Keene, Jr., Mr. Archibald Stirling, Mr. Henry Wise Garnett,* and *Mr. Guion Miller* for defendant in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court:

It is a cardinal principle of our system of government, that local affairs shall be managed by local authorities, and general affairs by the central authority, and hence, while the rule is also fundamental that the power to make laws cannot be delegated, the creation of municipalities exercising local self-government has never been held to trench upon that rule. Such legislation is not regarded as a transfer of general legislative power, but rather as the grant of the authority to prescribe local regulations, according to immemorial practice, subject of course to the interposition of the superior in cases of necessity.

Congress has express power "to exercise exclusive legislation in all cases whatsoever" over the District of Columbia, thus possessing the combined powers of a general and of a State government in all cases where legislation is possible. But as the repository of the legislative power of the United States, Congress in creating the District of Columbia "a body corporate for municipal purposes" could only authorize it to exercise municipal powers, and this is all that Congress attempted to do.

The act of the Legislative Assembly under which Hennick was convicted, imposed, as stated in its title, "a license on trades, business, and professions practiced or carried on in the District of Columbia," and required by clause three of section twenty-one, among other persons in trade, commercial agents, whose business it was to offer merchandise for sale by sample, to take out and pay for such license. This provision was manifestly regarded as a regulation of a purely municipal character, as is perfectly obvious, upon the principle of *noscitur a sociis*, if the clause be taken as it should be, in connection with the other clauses and parts of the act. But

it is indistinguishable from that held void in *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, and *Asher* v. *Texas*, 128 U. S. 129, as being a regulation of interstate commerce, so far as applicable to persons soliciting, as Hennick was, the sale of goods on behalf of individuals or firms doing business outside the District.

The conclusions announced in the case of Robbins were that the power granted to Congress to regulate commerce is necessarily exclusive whenever the subjects of it are national or admit only of one uniform system or plan of regulation throughout the country, and in such case the failure of Congress to make express regulations is equivalent to indicating its will that the subject shall be left free; that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems; and that a State statute requiring persons soliciting the sale of goods on behalf of individuals or firms doing business in another State to pay license fees for permission to do so, is, in the absence of congressional action, a regulation of commerce in violation of the Constitution. The business referred to is thus definitively assigned to that class of subjects which calls for uniform rules and national legislation, and is excluded from that class which can be best regulated by rules and provisions suggested by the varying circumstances of different localities, and limited in their operation to such localities respectively. *Cooley* v. *Board of Wardens*, 12 How. 299; *Gilman* v. *Philadelphia*, 3 Wall. 713. It falls, therefore, within the domain of the great, distinct, substantive power to regulate commerce, the exercise of which cannot be treated as a mere matter of local concern, and committed to those immediately interested in the affairs of a particular locality

It is forcibly argued that it is beyond the power of Congress to pass a law of the character in question solely for the District of Columbia, because whenever Congress acts upon the subject, the regulations it establishes must constitute a system applicable to the whole country; but the disposition of this case calls for no expression of opinion upon that point.

In our judgment Congress, for the reasons given, could not have delegated the power to enact the 3d clause of the 21st section of the act of assembly, construed to include business agents such as Hennick, and there is nothing in this record to justify the assumption that it endeavored to do so, for the powers granted to the District were municipal merely, and although by several acts, Congress repealed or modified parts of this particular by-law, these parts were separably operative and such as were within the scope of municipal action, so that this congressional legislation cannot be resorted to as ratifying the objectionable clause, irrespective of the inability to ratify that which could not originally have been authorized.

The judgment of the Supreme Court of the District is

*Affirmed.*

Mr. Justice Miller dissenting.

I do not find myself able to agree with the court in its judgment in this case.

The act of Congress creating a territorial government for the District of Columbia declared that the legislative power of the District should "extend to all rightful subjects of legislation within said District;" which undoubtedly was intended to authorize the District to exercise the usual municipal powers. The act of the Legislative Assembly of the District, under which Hennick was convicted, imposed "a license on trades, business, and professions practised or carried on in the District of Columbia," and a penalty on all persons engaging in such trades, business, or profession without obtaining that license. As the court says in its opinion, this was "manifestly regarded as a regulation of a purely municipal character."

The taxing of persons engaged in the business of selling by sample, commonly called drummers, is one of this class, and the only thing urged against the validity of this law is that it is a regulation of interstate commerce, and, therefore, an exercise of a power which rests exclusively in Congress. I pass the question, which is a very important one, whether this act of the Legislature of the District of Columbia, being one exercised under the power conferred on it by Congress, and

coming, as I think, strictly within the limit of the power thus conferred, is not so far as this question is concerned, sustained by the authority of Congress itself, and is substantially the action of that body.

The cases of *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, and *Asher* v. *Texas*, 128 U. S. 129, hold the regulations requiring drummers to be licensed to be regulations of commerce, and invasions of the power conferred upon Congress on that subject by the Constitution of the United States. In those cases I concurred in the judgment, because, as applied to commerce between citizens of one State and those of another State, it was a regulation of interstate commerce; or, in the language of the Constitution, of commerce "among the several States," being a prosecution of a citizen of a State other than Tennessee, in the first case, for selling goods without a license to citizens of Tennessee, and in the other case to citizens of Texas.

But the constitutional provision is not that Congress shall have power to regulate *all* commerce. It has been repeatedly held that there is a commerce entirely within a State, and among its own citizens, which Congress has no power to regulate. The language of the constitutional provision points out three distinct classes of cases in which Congress may regulate commerce, and no others. The language is that "Congress shall have power . . . to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

. Unless the act for which Hennick was prosecuted in this case was commerce with a foreign nation, among the several States, or with an Indian tribe, it is not an act over which the Congress of the United States had any exclusive power of regulation. Commerce among the several States, as was early held by this court in *Gibbons* v. *Ogden*, 6 Wheat. 448, means commerce between citizens of the several States, and had no reference to transactions by a State, as such, with another State, in their corporate or public capacities. Indeed, it would be of very little value if that was the limitation or the meaning to be placed upon it. I take it for granted, therefore,

that its practical utility is in the power to regulate commerce between the citizens of the different States.

Commerce between a citizen of Baltimore, which Hennick is alleged to be in the prosecution in this case, and citizens of Washington, or of the District of Columbia, is not commerce "among the several States," and is not commerce between citizens of different States, in any sense. Commerce by a citizen of one State, in order to come within the constitutional provision, must be commerce with a citizen of another *State;* and where one of the parties is a citizen of a Territory, or of the District of Columbia, or of any other place out of a State of the Union, it is not commerce among the citizens of the several States.

As the license law under which Hennick was prosecuted made it necessary for him to take out a license to do his business in the city of Washington, or the District of Columbia, which was not a State, nor a foreign nation, nor within the domain of an Indian tribe, the act upon the subject does not infringe the Constitution of the United States.

For these reasons I dissent from the judgment of the court.